UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| JONAH GOLD,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIAN SANDOVAL, et al.,<br><br>    Defendants. | Case No. 3:21-cv-00480-JVS-CBL<br><br>ORDER REGARDING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE |

Plaintiff Jonah Gold ("Gold") filed an Emergency Motion for a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue. Mot., ECF No. 10. Gold provided Defendants Brian Sandoval ("Sandoval"), Melody Rose ("Rose"), Lisa Sherych ("Sherych"), and Steve Sisolak ("Sisolak") (collectively, "Defendants") with notice of the motion and an opportunity to file an opposition. Fulton Decl., ECF No. 10-2. The Defendants did not file a response.

For the following reasons, the Court **DENIES** the request for a temporary restraining order and declines to issue an order to show cause why a preliminary injunction should not issue.

## I. BACKGROUND

This case concerns the constitutionality of the University of Nevada-Reno's COVID-19 vaccine policy. On August 20, 2021, the University of Nevada-Reno ("University") enacted the Student COVID-19 vaccine requirement ("Policy") which requires all students to be fully vaccinated against COVID-19 before

enrolling for the Spring 2022 semester.[1] Gold, who is currently enrolled as an undergraduate at the University, alleges that he has previously contracted COVID-19 and recovered. Compl., ECF No. 1, ¶ 12. Gold alleges that he is currently unable to enroll in in-person classes for the spring semester because of the Policy. Id. Gold seeks an injunction preventing the University from enforcing the Policy against him because he alleges that his prior infection gives him superior immunity to COVID-19 than vaccinated individuals. Id. ¶ 10.

On November 9, 2021, Gold filed his complaint seeking declaratory and injunctive relief based on the alleged unconstitutionality of the Policy. Compl., ECF No. 1. On November 19, 2021, Gold filed an emergency application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue. ECF No. 10. On December 2, 2021, the case was assigned to this Court. See ECF No. 26.

## II. LEGAL STANDARD

Courts look to substantially the same factors when determining whether to issue a temporary restraining order or a preliminary injunction. See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). The plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 5, 20 (2008).

---

[1] See Student COVID-19 vaccine requirement, University of Nevada, Reno, https://www.unr.edu/coronavirus/vaccine/requirements.

2

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "To reach this sliding scale analysis, however, a moving party must, at an 'irreducible minimum,' demonstrate some chance of success on the merits." Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (citing Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987)).

### III. DISCUSSION

*A.   Likelihood of Success on the Merits*

The Court begins by considering the most important factor in the preliminary injunction analysis, whether it is likely that Gold's complaint will succeed on the merits. See Garcia v. Google, Inc., 786 F.3d 733 (9th Cir. 2015). Gold brings three causes of action: (1) violation of substantive due process rights protected by the Fourteenth Amendment, Compl. ¶¶ 116-129; (2) violation of the Equal Protection Clause of the Fourteenth Amendment, id. ¶¶ 130-139; and (3) violation of the Fourth Amendment, id. ¶¶ 140-144. The Court begins by considering Gold's likelihood of success on the Fourteenth Amendment claims before turning to the Fourth Amendment claim.

*i.   Fourteenth Amendment Claims*

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests."

3

1 Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Supreme Court
2 jurisprudence "establish[es] a threshold requirement–that a challenged state action
3 implicate a fundamental right–before requiring more than a reasonable relation to
4 a legitimate state interest to justify the action." Glucksberg, 521 U.S. at 722.
5 Gold's complaint alleges that the Policy violates his "right of self-determination,
6 personal autonomy and bodily integrity, as well as the right to reject medical
7 treatment." Compl. ¶ 117. The Court finds that Gold has not established that the
8 Vaccine Policy implicates a fundamental right. See Glucksberg, 521 U.S. at 722
9 (describing the "tradition of carefully formulating the interest at stake in
10 substantive-due-process cases"); Williams v. Brown, – F. Supp. 3d –, 2021 WL
11 4894264, at *9 (D. Or. Oct. 19, 2021) ("This Court joins [the] growing consensus
12 and concludes that there is no fundamental right under the Constitution to refuse
13 vaccination."). Accordingly, rational basis review is the appropriate standard to
14 apply to the substantive due process claim.

16      Alternatively, Gold argues that the Policy violates the Equal Protection
17 Clause. To prevail on an equal protection claim, a plaintiff must "show that a class
18 that is similarly situated has been treated disparately." Boardman v. Inslee, 978
19 F.3d 1092, 1117 (9th Cir. 2020). If there is no suspect class at issue, differential
20 treatment is presumed to be valid so long as it is "rationally related to a legitimate
21 state interest." City of Cleburne v. Cleburne Living Cent., 473 U.S. 432, 440
22 (1985). Gold alleges that the Policy treats unvaccinated individuals in a punitive
23 way, see Compl. ¶ 132, but does not cite to any binding precedent to suggest that
24 unvaccinated individuals constitute a suspect class. Cf. Bauer v. Summey, No.
25 2:21-CV-02952-DCN, 2021 WL 4900922, at *11 (D.S.C. Oct. 21, 2021) (holding
26 that government policies that "treat vaccinated persons differently than
27 unvaccinated persons, including those who have natural immunity" do not target a
28

suspect class). Accordingly, the Court applies rational basis review to Gold's Equal Protection claim.

The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause. See Gamble v. City of Escondido, 104 F.3d 300, 307 (9th Cir. 1997). Substantive due process only requires a rational relationship between the challenged policy and a legitimate governmental objective. See Brach v. Newsom, 6 F.4th 904, 924 (9th Cir. 2021). Under the Equal Protection Clause, if there is no suspect class at issue a policy "need only rationally further a legitimate state purpose to be valid." Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 291 (1984) (internal quotations omitted). "Given the standard of review, it should come as no surprise [courts] hardly ever strike[] down a policy as illegitimate under rational basis scrutiny." Trump v. Hawaii, 138 S. Ct. 2392, 2420 (2018).

The two-tiered rational basis inquiry first asks whether the challenged law has a legitimate purpose, then whether the challenged law promotes that purpose. See Erotic Serv. Provider Legal Educ. and Research Project v. Gascon, 880 F.3d 450, 457 (9th Cir. 2018). The Defendants' stated purpose of mitigating the spread of COVID-19 and preventing severe illness, hospitalizations, and deaths is clearly a legitimate purpose.[2] See Roman Catholic Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2021) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."). The Policy's references to governmental guidance and scientific research shows that the University considered relevant data before

---

[2] See Letter from Lisa Scherych, Administrator, Division of Public and Behavioral Health, to the Honorable Steve Sisolak, Governor of the State of Nevada (Aug. 20, 2021), https://gov.nv.gov/uploadedFiles/govnewnvgov/Content/News/Press/2021_docs/2021-08-20_BOH_Regulation.pdf (recommending immediate adoption of the emergency regulation requiring students at Nevada universities and colleges to be fully vaccinated against COVID-19).

5

deciding to implement the Policy. See, e.g., Compl. ¶ 27. While Gold cites to numerous studies that he alleges show that the Policy is misguided, that does not mean that his challenge is likely to succeed. Under rational basis review, courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 66 (9th Cir. 1994) (emphasis in original).

Because the Policy easily survives rational basis review, the Court finds that Gold has not shown that his Fourteenth Amendment claims are likely to succeed on the merits.

### *iv.   Fourth Amendment Claim*

Gold also alleges that the Policy violates his Fourth Amendment rights by infringing on his privacy. Compl. ¶¶ 140-44. The only case law he cites to support that proposition that Fourth Amendment rights are violated is inapposite. See Anderson v. Taylor, No. 04-74345, 2005 WL 1984438 (E.D. Mich. Aug. 11, 2005) (finding mandatory blood draws for lipid testing as a condition of employment a violation of privacy interests). Nasal swab testing for COVID-19 does not create an intrusion under the skin, does not involve any genetic testing, and there is no use of the sample for law enforcement purposes. Accordingly, the Court finds that Gold is unlikely to succeed on his Fourth Amendment claim. See Streight v. Pritzker, No. 3:21-cv-50339, 2021 WL 4306146 (N.D. Ill. Sept. 22, 2021) (denying preliminary injunction because plaintiff had not shown that Fourth Amendment challenge to university policy requiring vaccination or saliva testing to attend in-person classes was likely to succeed on the merits).

         *C.*     *Irreparable Harm, Balance of the Harms, Public Interest*

Within the Ninth Circuit, "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies, 632 F.3d at 1134-35. At this stage, Gold has not only failed to show a likelihood of success, he has not raised serious questions going to the merits.

Even if the Court had found that Gold raised serious questions going to the merits, the other factors would weigh against granting a temporary restraining order. The balance of equities tips sharply towards the Defendants. The Defendants are attempting to protect a campus community with thousands of students, faculty, and staff from a deadly infectious disease. This far outweighs any harm Gold may face in choosing between receiving a medically-approved vaccination or receiving his education in an alternate manner. The public interest also weighs heavily in favor of the Defendants. See Bruesewitz v. Wyeth LLC, 562 U.S. 223, 226 (2011) (describing "the elimination of communicable diseases through vaccination" as "one of the greatest achievements of public health in the 20th century") (internal quotations omitted).

In light of the failure to raise serious questions going to the merits, the balance of hardships that weighs heavily towards the Defendants, and the strong public interest that weighs against an injunction, the Court **DENIES** the request for an temporary restraining order.

7

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the emergency request for a temporary restraining order and declines to issue an order to show cause.

**IT IS SO ORDERED.**

DATED: December 3, 2021

_____
HONORABLE JAMES V. SELNA
UNITED STATES DISTRICT JUDGE